UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| APRIL DI GIOIA, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Joan B. Gottschall |
| | ) | |
| v. | ) | Case No. 12 C 3071 |
| | ) | |
| INDEPENDENCE PLUS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff April DiGioia has sued defendant Independence Plus, Inc. ("Independence Plus") for sex and pregnancy discrimination and retaliation, pursuant to Title VII, 42 U.S.C. § 2000e. DiGioia alleges that she applied for a nursing position with Independence Plus, an in-home health care service provider, but was not hired because she was pregnant. Independence Plus now moves for summary judgment on DiGioia's claims pursuant to Federal Rule of Civil Procedure 56. Because, construing the facts and drawing all permissible inferences in DiGioia's favor, a reasonable jury could find that DiGioia was not permitted to complete the hiring process because she was pregnant, the court denies the motion.

**I. FACTS**

The court takes the following facts from the parties' Local Rule 56.1 Statements of Facts ("SOFs"), to the extent that they are supported by admissible evidence and relevant to issues raised in the motion. Where facts are disputed, the court takes no position as to which version of the disputed matter is correct. *See Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

Independence Plus is an in-home health care provider that specializes in medically complex cases, such as ventilator- and technology-dependent patients. Independence Plus is able to care for patients at home who once would have to be cared for in an ICU. Independence Plus has 300 to 400 nurses on staff in a given year. Its nurses work one-on-one with patients in the patient's homes without supervision. Nurses must know how to care for the patients and be able to think under pressure. Independence Plus is in constant need of nurses and must often turn away patients due to a lack of qualified nurses. Independence Plus maintains that its hiring standards cannot be compromised without a risk to patient safety.[1]

Independence Plus recruits prospective nurse applicants by contacting nurses with a current license and at least one year of experience. Recruiters first screen the applicants to make sure they meet these minimum requirements. A job recruiter for Independence Plus found DiGioia's resume on CareerBuilder. He called her, telling her that he was a recruiter. DiGioia testified that she "understood what that meant because that's how home health care works." (Def.'s SOF Ex. 8 (DiGioia Dep. I) 49:8-9, ECF No. 33.)

In February 2011, DiGioia sought a position with Independence Plus as a Licensed Practical Nurse. Celeste Clarke was Independence Plus's Director of Human Resources at the time. She was ultimately responsible for the hiring process, making the final decision as to whether or not to hire an applicant. She was also responsible for the company's discrimination training. Clarke stated in an affidavit that the other staff assisting in the hiring process had no authority to turn away nurses who met Independence Plus's standards and were required to go to her with any questions that arose during the process. (Def.'s SOF Ex. 4 (Clarke Aff.) ¶ 7, ECF No. 33.)

---

[1] Plaintiff states that she disputes this fact and cites her SOF ¶¶ 1-2 in support of the dispute, but the cited paragraphs demonstrate no genuine dispute.

According to Clarke, after an applicant is recruited, the applicant must come in to the Independence Plus offices to complete an application. At that point, the application process is turned over to a human resources coordinator. When DiGioia applied, that person was Elizabeth Gusman. Gusman scheduled appointments for nurse applicants and assisted in processing and collecting documents to facilitate the interview process. Gusman also sent out a list of documents that applicants needed to provide and was responsible for ensuring that every required document was in the applicant's file, and she assigned three on-line exams that applicants were required to take, either at home or in the Independence Plus office.

The written application required prospective nurses to list their last three employers, including employment dates, contact information, position, salary, and reason for leaving. At the end of the form, applicants signed to certify that the information provided was true and that employers and references were authorized to furnish information regarding past employment. To complete the application process and become an active employee, nurses also had to provide documents, including a nursing school transcript or diploma, pass on-line tests, and pass a clinical interview. They then had to complete pre-employment training and pass reference and license checks. Finally, they had to complete an orientation in a patient's home. Independence Plus commonly rejected nurse applicants for various reasons, such as failing to demonstrate good skills during pre-employment training and testing.

DiGioia appeared at the Independence Plus offices for an intake interview on February 9, 2011. She was not visibly pregnant. DiGioia provided Gusman with a doctor's note and the results of her last tuberculosis test. The note did not state that DiGioia was pregnant, but it was on stationery from an obstetrics and gynecology practice. It stated that DiGioia could return to work on September 8, 2011, and participate in all activities. (Def.'s SOF Ex. 9 (Note), ECF No.

33.) The tuberculosis test was conducted before DiGioia's pregnancy began and did not indicate that she was pregnant. (Def.'s SOF Ex. 10 (TB test), ECF No. 33.) DiGioia testified that she gave Gusman a note with a lifting restriction stating that she could not carry anything over fifty pounds because she was pregnant. (DiGioia Dep. I 59:11-21.)

Gusman testified at deposition, "No nurse [applicant] ever told me that they were pregnant." (Def.'s SOF Ex. 13 (Gusman Dep. 23:5-6, ECF No. 33.) Gusman testified that she did not recall meeting DiGioia and did not recall the intake interview on February 9, 2011. She further testified that she did not recall any nurse providing her with a lifting restriction and had no recollection of rejecting any applicant because of her pregnancy.

Pamela Wick was responsible for conducting clinical interviews with nurse applicants. Wick reported directly to Clarke. Her duties included reviewing and discussing the applicant's experience and nursing background, as listed on the application, and making a judgment call as to whether the applicant met the requirements of the job and could safely work without supervision. After screening applicants, Wick decided whether they could move on in the application process. She was the only person who interviewed nurse applicants in February 2011 and typically interviewed six applicants a day. If applicants failed the clinical interview or did not qualify to be interviewed, they were escorted out of the office. Wick was terminated from Independence Plus around January 4, 2012.

DiGioia testified that Wick spoke with her and that "[t]he majority of the conversation" was about her pregnancy. (DiGioia Dep. I 68:15.) She testified that Wick told her that she was qualified but that "right now we cannot hire you because you're pregnant." (*Id.* at 64:2-3.)

4

DiGioia testified that Wick told her, "my supervisor would be angry with me and I can't hire you because you're pregnant and the lifting restrictions that show on here." (*Id.* at 66:13-16.)[2]

Independence Plus's job description for a Licensed Practical Nurse requires that the nurse be able to lift fifty pounds and be able to perform other physical tasks. A nurse who could not lift fifty pounds would not be hired, and the lifting restriction was applied consistently. DiGioia testified that she was able to lift up to fifty pounds. The parties agree that, despite her restriction, she met Independence Plus's physical requirements and that the restriction would not have disqualified DiGioia from a nursing job with Independence Plus. Clarke stated in an affidavit that Wick would have asked her for clarification if she had concerns about an applicant not meeting the lifting requirement. (Clarke Aff. ¶ 11.)

Wick had no recollection of DiGioia or any interview that occurred on February 9, 2011. She testified that her colleagues in the personnel department similarly lacked any recollection of DiGioia. Wick testified that she did not recall whether she joined the intake interview with Gusman and DiGioia, nor did she "recall making any decisions not to hire any nurse during the interview process at Independence Plus because they were pregnant." (Def.'s SOF Ex. 7 (Wick Dep.) 50:5-7, ECF No. 33.) "I never did that," she added. (*Id.* at 50:10.) She testified that she would remember such an event had it occurred. Independence Plus has a policy that it does not discriminate on the basis of race, sex, or gender. Wick believed she was trained on the policy but did not recall the date of the training.

---

[2] Although Independence Plus argues that Gusman and Wick's statements, as reported by DiGioia, are hearsay, the court considers them as evidence for purposes of this motion because they were made within the scope of the speakers' employment with Independence Plus and appear to be admissible as party opponent admissions pursuant to Federal Rule of Evidence 801(d)(2)(D). *See Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 761-63 (7th Cir. 2003).

DiGioia did not complete all of the requirements of Independence Plus's hiring process. Independence Plus requires that the signed application form be filled out completely, but DiGioia did not complete the form. She did not provide a complete job history or resume, nor did she provide her nursing diploma or transcript. Clarke testified that Wick could not have administered a clinical interview to DiGioia without a complete work history. (Def.'s SOF Ex. 3 (Clarke Dep.) 75:6-10, 76:1-16, ECF No. 33.) References were checked before applicants were hired, and DiGioia's could not be checked because she did not provide her employers' addresses or supervisors' names.

DiGioia claims that she was unable to complete the application form because she did not have the information with her. The recruiter had told her by email, however, that she could provide documents "as we go through the process." (Def.'s SOF Ex. 22 (Feb. 2, 2011 Email), ECF No. 33.) Independence Plus agrees that DiGioia could have provided a copy of her nursing diploma after February 9, 2011, and and that applicants were permitted to produce required but missing documents as the hiring process proceeded. Gusman testified that if an applicant did not have all the required information, he or she could schedule a new appointment with the scheduling coordinators. (Gusman Dep. 15:16-17, 24:12-14.) Applicants were commonly sent home to obtain reference information.

DiGioia failed one of the required on-line exams on February 7, 2011, before she came to the Independence Plus offices. She did not retake the test. The on-line tests could be retaken twice before an applicant was disqualified from employment with Independence Plus. Applicants commonly retook the tests in the office. Clarke testified that the test was reset and that DiGioia could also have retaken it at home. (Clarke Dep. 98:15-20.) She testified that the test was available and that she did not know "what was going through" DiGioia's mind when she

did not retake it. (*Id.* at 43:11-14.) DiGioia, however, testified that that she asked Wick if she should retake the test and that Wick told her no. (Def.'s SOF Ex. 14 (DiGioia Dep. II) 27:17-28:4, ECF No. 33.)

Clarke testified that Independence Plus has no information about the number of women who were pregnant at the time they were hired as nurses, because the information was "irrelevant," and "unless someone says I am pregnant and/or gives us a document that says I am pregnant, we would not know." (Clarke Dep. 48:19-20.) Independence Plus thus lacks any knowledge as to whether it has hired women who were pregnant on the date of hiring. Independence Plus granted twelve formal pregnancy leaves between January 1, 2009, and August 15, 2011. Other pregnant nurses may have worked for the company. Nurses are not required to report pregnancies and may decline assignments without disclosing why they want time off work. Clarke testified at deposition that Independence Plus found pregnant nurses to be "motivated" and "very caring." (*Id.* at 89:5-6.)

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

## III. ANALYSIS

DiGioia alleges that Independence Plus discriminated against her based on her sex and her pregnancy, in violation of Title VII, by preventing her from applying for a nursing position. To withstand a motion for summary judgment on her sex discrimination claim, DiGioia must put forth evidence that she suffered an adverse employment action and that the action was the product of discrimination based on her sex. The legal analysis for her pregnancy discrimination claim is the same. *See Griffin v. Sisters of Saint Francis, Inc.*, 489 F.3d 838, 842-43 (7th Cir. 2011) (explaining that for purposes of Title VII, discrimination based on pregnancy is discrimination based on sex). The Pregnancy Discrimination Act ("PDA") incorporated discrimination based on "pregnancy, childbirth, or related medical conditions" into the forms of sex discrimination actionable under Title VII. 42 U.S.C. § 2000e(k). "[P]regnant women are to be treated the same for employment-related purposes as other persons." *Hunt-Golliday v. Metro. Water Reclamation Dist.*, 104 F.3d 1004, 1011 (7th Cir. 1997). An unlawful employment practice occurs if pregnancy is a motivating factor for an adverse employment action. *See id.*

Here, it is undisputed that DiGioia was not hired by Independence Plus as a nurse, which constitutes an adverse employment action. There are two ways to establish that the action was the product of discrimination. Under the "direct method," a plaintiff must "point to enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue." *Egonmwan v. Cook Cnty. Sheriffs Dep't*, 602 F.3d 845, 849 (7th Cir. 2010). The focus of the direct method of proof is whether the evidence offered "points directly" to a discriminatory reason for the employer's action. *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009).

Alternatively, under the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff must establish a prima facie case of discrimination. To make out a prima facie case in a failure-to-hire claim, the plaintiff must present evidence that (1) she was a member of a protected class (i.e., she was a woman, or she was pregnant and her employer knew that she was pregnant); (2) she applied for, and was qualified for, a vacant position; (3) she was rejected for the position; and (4) the position was filled by an individual outside of the protected class or remained available. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). If any element of the prima facie case is lacking, the plaintiff loses. If she successfully establishes a prima facie case, she must then show that the defendant's proffered "legitimate, non-discriminatory reasons for [its] actions . . . were pretextual." *Egonmwan*, 602 F.3d at 850.

Independence Plus argues that DiGioia was not hired because she failed to complete its application process. It is undisputed that DiGioia did not complete a written application form, nor did she provide her nursing diploma or transcript. Her references could not be checked because she did not provide addresses or supervisor's names for her employers. She also failed to pass the required on-line examinations. Independence Plus denies that DiGioia was prevented from completing her application and proceeding with the hiring process, arguing that she could have provided her documents and completed the required exams after February 9, 2011, but did not do so.

If DiGioia failed to apply for a nursing position with Independence Plus, her discrimination claim would fail under either the direct or indirect method of proof. She could not demonstrate that the failure to hire her was the product of discrimination based on her pregnancy. Nor could she establish a prima facie case of discrimination because she could not

9

show that she applied for the position in question. *See Johnson v. Gen. Bd. of Pension & Health Benefits of the United Methodist Church*, 733 F.3d 722, 728 (7th Cir. 2013); *Loyd v. Phillips Bros., Inc.*, 25 F.3d 518, 523 (7th Cir. 1994).

DiGioia maintains, however, that she did not complete the application process because she was told by Wick that she would not be hired because she was pregnant. Thus, even though the parties agree that she could have supplemented her application with additional information and documents and could have retaken the exam that she failed, there would have been no point in doing so. Where "a plaintiff is deterred from hiring by the very discriminatory practices [s]he is protesting yet can show that [s]he would have applied had it not been for those practices, a sufficient preliminary link between discrimination and adverse consequences is established." *Loyd*, 25 F.3d at 523. *See also Fischer v. Avanade, Inc.* 519 F.3d 393, 402 n.2 (7th Cir. 2008) ("At first blush, [plaintiff] apparently fails to meet the second element of the prima facie case, since she did not apply for the . . . position. In cases such as this, however, where the plaintiff alleges that there were discriminatory motives behind not announcing the position to her, [she] only needs to show that . . . she would have accepted the offered position.") (internal quotation marks and citation omitted). The court concludes that, under the direct method of proof, DiGioia has presented direct evidence that Independence Plus prevented her from applying for a nursing position because she was pregnant.

Independence Plus argues, however, that DiGioia's evidence is limited to her account of what she was told in the intake interview with Gusman and Wick, and that no reasonable jury could find for DiGioia based only on that evidence. Independence Plus first contends that Wick had only limited involvement in its hiring process, and that hiring decisions were made by Clarke. But according to the undisputed facts, after screening applicants, Wick decided whether

10

they could move on in the application process. Thus, even though Clarke had the ultimate authority to decide whether a nurse was hired, a jury could find that Wick had the ability to prevent an application from being considered. Therefore, even though she did not have the final say on hiring matters, Wick's statement is direct evidence that DiGioia was not permitted to apply for a position because she was pregnant.

Independence Plus further argues that DiGioia's account of her intake interview is not credible because her accounts of the events in question in her amended complaint and in her two depositions are inconsistent. It also contends that DiGioia's story has been rebutted by Gusman and Wick. In so arguing, however, Independence Plus ignores a basic tenant of summary judgment: that the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004). In determining whether there is a genuine issue of fact for purposes of a motion for summary judgment, the court must credit DiGioia's testimony as true. She testified that Wick told her, "I can't hire you because you're pregnant and the lifting restrictions that show on here." It is undisputed that DiGioia had not been placed on a lifting restriction that prevented her from lifting up to fifty pounds, as required by the licensed practical nurse job description. When she asked whether she should retake the on-line test that she had failed, she was informed by Wick that there would be no point in doing so.

DiGioia's first-hand testimony presents facts that demonstrate discriminatory intent, "even if that testimony may be less plausible than the opposing litigant's conflicting testimony (a question [the court] need not—nay, cannot—reach)." *Darchak*, 580 F.3d at 632. Whether DiGioia's account of her encounter with Gusman and Wick is credible is a question of fact for

the jury to decide. In other words, DiGioia is entitled to a trial at which she can testify as to her recollection of the intake interview.

## IV. CONCLUSION

For the reasons explained above, Independence Plus's motion for summary judgment is denied. Parties are to appear for a status hearing on January 31, 2014, at 9:30 a.m.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: January 14, 2014